UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United Association of Journeymen and Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada, Local 525 Las Vegas, Nevada AFL-CIO,<br><br>Plaintiff<br><br>v.<br><br>Bombard Mechanical, LLC,<br><br>Defendant | Case No.: 2:19-cv-00431-JAD-DJA<br><br>**Order Granting in Part Motion to Confirm Arbitration Award, Granting Motion to Vacate or Modify Arbitration Award, and Denying Motion to Intervene**<br><br>[ECF Nos. 30, 34, 38] |

Plaintiff United Association of Journeymen and Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada, Local 525 Las Vegas, Nevada AFL-CIO (Local 525) moves to the confirm the award issued after arbitration with defendant Bombard Mechanical, LLC under the Master Labor Agreement (MLA) between Local 525 and Bombard's employer association, the Mechanical Contractors Association of Las Vegas (MCA).[1] Local 525 previously filed a grievance, complaining that Bombard violated the MLA by, among other things, subcontracting computer-assisted-design (CAD) work to a non-union contractor.[2] The arbitrator sustained Local 525's grievance and, as a remedy, instructed that the MLA covered CAD work and mandated that contractor signatories to the MLA be granted a one-year grace period from grievances to transition to paying CAD workers in accordance with the MLA.[3]

---

[1] ECF No. 30 at 1.
[2] ECF No. 1 at ¶ 12, ECF No. 1-2 at 2–3.
[3] ECF No. 30 at 73.

While Local 525 moves to confirm the arbitration award,[4] Bombard moves to vacate it in part, arguing that the arbitrator exceeded his authority by imposing obligations on MCA-affiliated contractors that were not parties to the arbitration proceeding.[5] Local 525 counters that the arbitrator merely considered the questions presented to him and the MCA was a party to the arbitration or at least controlled Bombard's position.[6] But I find that the scope of the issues before the arbitrator involved only Bombard and the union, MCA was not a party to the arbitration, and Local 525 fails to demonstrate that Bombard acted at the direction of MCA (or why that is legally significant).  So I confirm the arbitration award only insofar as it applies to Bombard and Local 525 and otherwise vacate it.

Separately, Smart Local 88—another union whose members perform CAD work and will be affected if the arbitration award applies to all MCA contractors—moves to intervene to argue that the award should only apply to Local 525 and Bombard.[7] Because it fails to show that Bombard can't protect its interests on this point, I deny Smart Local's motion.  But I do so without prejudice to its ability to move again to intervene if circumstances change.

---

[4] ECF No. 30 at 1.
[5] ECF No. 33 at 1–2.
[6] ECF No. 35 at 5–8.
[7] ECF No. 38 at 1.

## Discussion[8]

**I. The arbitrator exceeded his authority by sweeping non-parties into the arbitration decision.**

Local 525 moves to confirm the arbitration award.[9] Courts grant arbitration awards significant deference and will confirm them "even in the face of erroneous findings of fact or misinterpretations of law."[10] Nonetheless, a court will vacate an arbitration award if, among other potential bases for vacatur, "the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[11] If that occurs, and the award is divisible, the court "may vacate part of the award and leave the remainder in force."[12]

**A. The arbitrator impermissibly bound non-parties to the arbitration.**

Bombard "does not contest the [a]ward as it applies to itself and the [u]nion" but moves to vacate or modify any "obligations on entities or contractors [that] were not parties" to the grievance or arbitration.[13] It argues that the award's remedy "unambiguously and impermissibly

---

[8] Noting the relationship between the arbitrated issues and its counterclaims, Bombard seeks to voluntarily dismiss those counterclaims without prejudice under Rule 41(a)(2). Fed. R. Civ. P. 41. ECF No. 33 at 12. I grant that request and dismiss Bombard's claims without prejudice.

[9] ECF No. 30 at 1.

[10] *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010) (citation omitted).

[11] *Id.* (citing 9 U.S.C. § 10(a)); *see also* 9 U.S.C § 9 (district courts may also modify an award if "the arbitrator[] [has] awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted").

[12] *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009).

[13] ECF No. 33 at 1–2. Bombard also initially argued that the union's December 2022 motion was premature because the arbitrator retained jurisdiction until January 21, 2023, ECF No. 33 at 11, but appears to have abandoned that argument in its reply brief filed five days after the arbitrator ceded jurisdiction, ECF No. 37, presumably because that date had passed.

3

exceeds the scope of . . . the issues submitted to the [a]rbitrator . . . by purporting to impose obligations" on contractors other than Bombard.[14] It cites the part of the remedy that provides "current contract members signatory to the MLA . . . a grievance grace period of one year . . . to allow contractors time to adjust from their past and current practices as necessary"—language implying that all MLA contractors (and not just Bombard) must comply with the arbitration decision.[15]

To support its argument, Bombard relies on the Ninth Circuit decision in *Comedy Club, Inc. v. Improv West Associates*.[16] In that case, the court rejected an attempt to extend injunctive relief like the type awarded by the arbitrator here to non-parties to the litigation.[17] The court pointed to Federal Rule of Civil Procedure 65(d)(2)—which enables injunctions to bind parties; their officers, agents, servants, employees, and attorneys; and others "who are in active concert or participation with" them[18]—and held that the award went "well beyond binding . . . agents, employees, or people in active concert or participation" with the parties.[19] Though the court's decision also rested on the fact that the non-parties were non-signatories of the contract at issue,[20] the union cites nothing for the proposition that an arbitration decision interpreting a collective-bargaining agreement may obligate businesses that were not parties to the arbitration

---

[14] ECF No. 33 at 15.

[15] *Id.* at (citing ECF No. 30 at 73). Though this language could alternatively be read as a condition only on Local 525 to abstain from filing CAD-related grievances rather than also as a mandate on all contractors, the parties appear to agree that the remedy reads more broadly. ECF No. 33 at 15; ECF No. 35 at 5–8.

[16] *Comedy Club*, 553 F.3d at 1287; *see* ECF No. 33 at 15.

[17] *Comedy Club,* 553 F.3d at 1287–1288.

[18] Fed. R. Civ. P. 65.

[19] *Comedy Club,* 553 F.3d at 1287.

[20] *Id.*

4

merely because they also signed the agreement.  And I find that the other contractors that Local 525 seeks to bind did not act in concert or participation with Bombard, as Local 525's grievance only dealt with *Bombard's* sub-contracting CAD work to a non-union contractor.  So I confirm the award only as to Local 525 and Bombard and vacate it as to other entities.

      Local 525's arguments that the arbitrator did not exceed his authority lack merit.  It first argues that the parties broadly framed the questions for the arbitrator to include not just itself and Bombard.[21]  But those questions arose in the context of the dispute between the union and Bombard.[22]  And, even if they didn't, the arbitrator lacked authority to bind non-parties to the arbitration no matter how the parties framed the issues.  Local 525's protestations that MCA "was a party to these proceedings"[23] belie the facts: I ordered the union and Bombard—not the MCA or other contractors—to arbitrate the CAD dispute, and the case caption, introduction, and questions as framed by the arbitrator in his decision indicate that Local 525 and Bombard were the true parties to the arbitration.[24]  Local 525 provides scant evidence for its argument that the "MCA . . . seemingly controlled Bombard's position during the arbitration proceedings" and cites nothing for the notion that this alleged control expands the arbitrator's authority to bind other MLA contractors.[25]

---

[21] ECF No. 35 at 5.

[22] ECF No. 1-2 at 2.

[23] ECF No. 35 at 7.

[24] ECF No. 30 at 20–21; *id.* at 22 (framing questions as whether "Bombard violate[d]" the collective bargaining agreement).  Neither the inclusion of MCA under the heading "parties in this case" among a slate of other entities and witnesses that were not true parties nor the presence of an MCA representative at the arbitration makes it a party.  *Id.* at 1, 5; ECF No. 35 at 7; ECF No. 37 at 5.

[25] ECF No. 35 at 6.

### B. Local 525's standing arguments are unpersuasive.

Local 525's arguments regarding justiciability also fail. The union contends that Bombard lacks "standing to raise . . . an issue as to or on behalf of any non-parties" and that the question of whether "all of the . . . signatories to the [MLA] will honor [it] . . . remains speculative and hypothetical and is not ripe for this [court] to decide."[26] But the standing doctrine concerns whether a *plaintiff* can show injury in fact, causation, and redressability to assert a *claim*;[27] Local 525 points to no authority for the proposition that a *defendant* must separately show standing to raise an *argument*. Indeed, litigants often discuss how a court ruling might affect non-parties. Regardless, even if Bombard lacked standing, this court would independently assess that argument because it goes to this court's authority,[28] as it is deciding whether to reduce to judgment an arbitration award that exceeds the bounds of Rule 65. I also find that the scope of the arbitration award is ripe for decision: Local 525's request to reduce that award to judgment is "definite and concrete, not hypothetical or abstract"; the facts are sufficiently developed for the issue to be fit for judicial decision; and withholding court consideration would burden the parties and other contractors with uncertainty and oblige them to alter their employment practices.[29]

---

[26] *Id.*

[27] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).

[28] *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840–41 (9th Cir. 2022).

[29] *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138–1142 (9th Cir. 2000) (explaining that an issue is constitutionally ripe if it is "definite and concrete, not hypothetical or abstract" and that the discretionary prudential-ripeness inquiry balances the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration") (citations omitted).

**II.    Smart Local's intervention is unnecessary because its relevant interests are represented by Bombard.**

Concerned that Local 525 might lack standing to pursue its arbitrator-exceeded-his-authority argument, Smart Local moves to intervene or file an amicus brief to make that same argument.[30] It asserts that, if the arbitrator's award applies to contractors beyond Bombard, those other contractors will be required to hire Local 525 members only and won't be able to hire Smart Local members to perform a certain type of CAD work.[31] A nonparty is entitled to intervene if it: (1) timely moves to intervene; (2) has a significantly protectable interest related to the subject of the action; (3) may have that interest impaired by the disposition of the action; and (4) will not be adequately represented by existing parties.[32]

Even assuming Smart Local satisfies the first three criteria, I find the last unmet. In evaluating this adequacy-of-representation criterion, courts balance three factors: (a) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (b) whether the present party is capable and willing to make such arguments; and (c) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.[33] Though Smart Local argues that it is entitled to intervene because Local 525 challenges Bombard's standing,[34] I find that Bombard has standing to raise—and is thus capable of raising—the argument that the arbitration decision's reach should be restricted to the parties to the arbitration. Also, even if Bombard raised this argument based on different

---

[30] ECF No. 38 at 3–4.
[31] *Id.* at 9.
[32] *W. Watersheds Project*, 22 F.4th at 835.
[33] *Id.* at 840–41.
[34] ECF No. 38 at 20–21.

interests than Smart Local's,[35] Bombard has already "undoubtedly ma[de]"—and is thus patently willing to make and won't neglect—that argument.[36] So I deny Smart Local's motion to intervene. And, because this order considers and accepts the argument that Smart Local desires to assert, I also decline its request for permissive intervention or amicus status. But I do so without prejudice to its ability to re-move to intervene or file an amicus brief if Bombard's diverging or potentially conflicting interests[37] or another change in circumstance alters this analysis.

### III.    Local 525's attorneys-fees motion is unsupported.

Local 525 also moves for attorneys' fees based on Bombard's alleged bad faith in "refus[ing] to attend arbitration," failing to "timely oppose the [m]otion for [c]ompelled [a]rbitration," and rebuffing the union's request to "stipulate to this [c]ourt enforcing the arbitrator's [o]pinion and [a]ward."[38] Local Rule IC 2-2(b) calls for "a separate document" for "each type of relief requested,"[39] and Local Rule 54-14 requires attorneys-fee motions to be accompanied by an attorney affidavit, "[a] reasonable itemization and description of the work performed," and a summary of several categories of information.[40] Bombard complied with neither rule, as it tacked its attorneys-fee request onto its motion to confirm the arbitration award and supplied no supporting documentation.[41] And it failed to cite any legal authority that

---

[35] *Id.* at 21.
[36] *W. Watersheds Project*, 22 F.4th at 840–41.
[37] ECF No. 38 at 21.
[38] ECF No. 30 at 12–13.
[39] L.R. IC 2-2(b).
[40] L.R. 54-14.
[41] ECF No. 30 at 13.

supports fee shifting in this case, so I deny its motion without prejudice to its filing a separate, properly supported motion.

### Conclusion

IT IS THEREFORE ORDERED that Local 525's motion to confirm the arbitration award **[ECF No. 30] is GRANTED in part**. Bombard's motion to vacate or modify portions of the arbitration award **[ECF No. 34] is GRANTED**. The award is confirmed as it applies to Bombard, Local 525, and their officers, agents, servants, employees, and attorneys, and vacated as to all other persons. Local 525's request for attorneys' fees is denied without prejudice to its ability to file a properly supported motion.

IT IS FURTHER ORDERED that Smart Local's **motion to intervene [ECF No. 38] is DENIED** without prejudice to its ability to re-file a similar motion if circumstances change.

IT IS FURTHER ORDERED that Bombard's counterclaims are dismissed without prejudice. **The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
July 13, 2023